# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IBRAHIM ELGABROWNY,<br><br>     Plaintiff,<br><br>v.<br><br>CENTRAL INTELLIGENCE<br>AGENCY, *et al.*,<br><br>     Defendants. | Civil Action No. 17-cv-00066 (TSC) |

## MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiff Ibrahim Elgabrowny, proceeding *pro se*, filed suit against the Central

Intelligence Agency ("CIA"), Department of Justice ("DOJ"), and Executive Office of United

States Attorneys ("EOUSA") (collectively "Defendants").[1] Plaintiff alleges violations of the

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Privacy Act ("Privacy Act" &

"PA"), 5 U.S.C. § 552a. Sec. Am. Compl., ECF No. 29 at 1.[2]

The DOJ, FBI, and EOUSA have filed a Motion for Summary Judgment, ECF No. 45,

("DOJ Mot."), and supporting pleadings. The CIA has also filed a Motion for Summary

Judgment ("CIA MSJ"), ECF No. 47, and supporting pleadings. Plaintiff filed a combined

Opposition and Cross-Motion for Summary Judgment, and several supplemental filings in

---

[1] Plaintiff also sued the Department of State. However, the Department of State has been actively reviewing and disclosing records pursuant to Plaintiff's FOIA/PA requests. *See, e.g.,* ECF No. 43. Therefore, Plaintiff's FOIA/PA Requests to the Department of State and any issues relating thereto are not yet ripe or properly before the court.

[2] The court references the ECF-generated page numbers in citing to all of Plaintiff's filings.

opposition.  Also included in Plaintiff's Opposition/Cross Motion are: a Motion to Strike

Portions of the EOUSA (Stone) Declaration ("MTS Stone"), ECF No. 51 at 33–6, a Motion to

Strike Portions of the FBI (Hardy) Declaration ("MTS Hardy"), *id.* at 37–40, a First Motion for

In Camera Review & Discovery ("First Mot. In Cam."), *id.* at 41–4, and a Second Motion for In

Camera Review & Discovery ("Sec. Mot. In Cam."), *id.* at 45–6.  He has also filed a separate

Third Motion for In Camera Review ("Third Mot. In Cam."), ECF No. 56.

Defendants argue that they conducted adequate searches for responsive documents,

properly withheld responsive information under applicable exemptions, and satisfied their

segregation obligations under FOIA.

For the reasons stated herein, FBI's Motion for Summary Judgment is GRANTED, CIA's

Motion for Summary Judgment is GRANTED in part and DENIED in part without prejudice,

and EOUSA's Motion for Summary Judgment is DENIED without prejudice.  Plaintiff's Cross

Motion for Summary Judgment is DENIED, in part with prejudice and in part without prejudice.

His remaining Motions and requests for relief are DENIED.

## II.  FACTUAL BACKGROUND

Plaintiff's FOIA/PA Requests primarily concern his and others' prosecution, convictions,

and the underlying criminal investigation related to the 1993 World Trade Center bombing.  Sec.

Am. Compl. at 4, 9–10, 18; Pl.'s Opp. at 5–6; *United States v. Elgabrowny*, *et al.*, No. 93-cr-

00181 (MBM) (S.D.N.Y. filed 1993).

<u>FBI FOIA/Privacy Act Request Nos. 1341446-000 & 1341446-001</u>

The FBI received Plaintiff's first FOIA Request, with a demand for expedited processing

and fee waiver, by email dated November 12, 2015.  Hardy Decl. ¶ 5.  He requested [sic]:

Copy of the FBI Special Agent [Bradley J. Garret]'s notes of interview with (Abdul Basit Mahmoud Abdul Karim) [the mastermind of the 1993's World Trade Center Bombing Conspiracy (WTC)], he is also known on the court documents as (Ramzi Ahmed Yousef). As the Court record reflects, SUCH INTERVIEW WAS CONDUCTED IN PAKISTAN[ON FEB-7-1995) AND LASTED FOR APPROXIMATELY(TWO)HOURS. U.S. v. Ramzi Yousef, 925 F.Supp. 1063(S.D.N.Y. 1996), i.d. at 1066.

Copy of the FBI Special Agent [Charles B. Stern's] notes of interview with (Abdul Basit Mahmoud Abdul Karim[the mastermind of the 1993's World Trade Center Bombing Conspiracy (WTC)], he is also known on the court documents as(Ramzi Ahmed Yousef). As the court record reflects, SUCH INTERVIEW WAS CONDUCTED ON (FEB-8-1995) ABOARD AIRPLANE DURING HIS WAY BACK TO THE U.S. AFTER HIS ARREST IN PAKISTAN ON(FEB-7-1995). Such interview lasted for approximately(six hours)with the presence of Secret service Agent(Brian Parr), the interview notes were written by FBI Agent(C. Stem). U.S. v. Ramzi Yousef, 925 F.Supp. 1063(S.D.N.Y. 1996), i.d. at 1066-1067.

*Id.*; FBI Ex. A. On December 10, 2015, Plaintiff submitted a duplicate request to the FBI. Hardy Decl. ¶ 6; FBI Ex. B. On December 17, 2015, the FBI sent Plaintiff a letter acknowledging receipt and assigning Request No. 1341446-000. Hardy Decl. ¶ 7. In the letter, the FBI advised that, absent express authorization and consent from the third-party individual whose records are sought, proof of death of the third-party, or a clear demonstration that the public interest in disclosure outweighs the privacy interest of the third-party, the FBI could "neither confirm nor deny the existence of any records responsive to [Plaintiff's] request, which, if they were to exist, would be exempt from disclosure pursuant to FOIA Exemptions (b)(6) and (b)(7)(C)." *Id.*; FBI Ex. C. The FBI therefore provided a "*Glomar* Response." Hardy Decl. ¶ 17; *see Phillipi v. CIA*, 655 F. 2d 1325, 1327 (D.C. Cir. 1981) (affirming FBI internal policy to neither confirm nor deny identifying information of individuals which could compromise the national security or divulge intelligence sources and methods). A certification of identity form ("Privacy Waiver") was enclosed, with instructions to be completed by the subject of the

Request. Hardy Decl. ¶ 17. Plaintiff was also advised that the Request would be closed if no response was received within 30 days, and of his right of appeal to Office of Information Policy ("OIP"). Hardy Decl. ¶ 7; FBI Ex. C.

On December 17, 2015, the FBI had received none of the required information, and closed the Request and denied the demand for expedited processing. Hardy Decl. ¶ 8; FBI Ex. D. Plaintiff filed an appeal with OIP on January 3, 2016. Hardy Decl. ¶ 9; FBI Ex. E. OIP acknowledged the appeal on January 28, 2016, assigning it Appeal No. AP-2016-01325. Hardy Decl. ¶ 10. OIP (1) affirmed the FBI's determinations, (2) found the request for expedited processing was moot, and (3) found the fee waiver requested was moot because no fees had been assessed. *Id.*

On September 1, 2016, Plaintiff submitted a "supplement" to his original FOIA Request, seeking copies of the FBI agents' handwritten notes of interviews with Abdul Basit Mahmoud Abdul Karim (AKA "Ramzi Ahmad Yousef") (hereinafter "Yousef") from 1995, following Yousef's arrival in the United States. Hardy Decl. ¶ 11. Plaintiff again requested expedited processing and a fee waiver. FBI Ex. G. The FBI acknowledged receipt of that request on September 12, 2016, assigning it Request No. 1341446-001. Hardy Decl. ¶ 12. In the same correspondence, the FBI denied the Request, again noting that Plaintiff must provide (1) an authorization and consent from Yousef, or (2) proof of Yousef's death, or (3) a justification that the public interest in disclosure outweighed Yousef's personal privacy. *Id.* The FBI also relied upon FOIA Exemptions (b)(6) and (b)(7)(C), 5 U.S.C. §§ 552(b)(6), (7)(C). FBI Ex. H. Once again, the FBI advised Plaintiff that the Request would be closed if no response was received within 30 days, notified him of his appeal rights, and denied the request for expedited processing. *Id.* On September 27, 2016, Plaintiff appealed the FBI's denial to OIP and requested expedited

processing. Hardy Decl. ¶ 13. OIP acknowledged the appeal on October 6, 2016, assigning it Appeal No. AP-2017-000068, and advised that it would be handled in order of receipt. Hardy Decl. ¶ 14. On December 19, 2016, OIP affirmed the FBI's actions. Hardy Decl. ¶ 15; FBI Ex. K.

On January 11, 2017, Plaintiff filed this suit. In preparation, the FBI "again reviewed information from the Yousef prosecutions and determined that it had, in court records, acknowledged the fact that the interviews took place." Hardy Decl. ¶ 17, *id.* n.3. Given the acknowledgement, the FBI vacated its *Glomar* position and conducted searches for the records, finding none responsive to Plaintiff's Requests. *Id.* ¶¶ 17, 26–8.

<u>CIA FOIA/Privacy Act Request Nos. F-2011-001562/F-2011-01562A & P-2014-00346</u>

On May 24, 2011, Plaintiff submitted a FOIA/PA Request for a "copy of Exhibit (C) that was attached to the Declaration of Hugh E. Price, Deputy Director of Operation, Central Intelligence Agency, sworn to July 21, 1994." Shiner Decl. ¶ 5; CIA Ex. A. Plaintiff noted that the "declaration and exhibit[3] were submitted to the United States Attorney's Office for the Southern District of New York ("USAO-SDNY") in 1994 regarding the trial of *U.S. v. Omar Ahmad Abdel Rahman, et al*., S3-93-Cr-181 (MBM)." *Id.* The CIA acknowledged receipt of Plaintiff's Request on October 10, 2012, assigning it Request No. F-2011-001562. Shiner Decl. ¶ 5; CIA Ex. B.

On June 27, 2013, the CIA responded to Plaintiff, indicating that it had not located any responsive records to the Request. Shiner Decl. ¶ 6; CIA Ex. C. Plaintiff appealed on July 11, 2013. Shiner Decl. ¶ 6; CIA Ex. D.

---

[3] Hereinafter, the court refers to this requested document as "Exhibit C."

Plaintiff corresponded with the CIA on January 12, 2014, attempting to expand his original Request. Shiner Decl. ¶ 7; CIA Ex. F. He requested

> (A) A copy of Exhibit (C) that was attached to the Declaration of Hugh Price;
>
> (B) All information pertaining to my name that might be in the declaration of Hugh E. Price, Deputy Director of Operation, CIA, sworn to July-21-1994, that was sent to the U.S. Department of Justice, or was sent directly to the U.S. Attorney office, Southern District of New York, or to any other U.S. agency regarding the trial of *U.S. v. Omar Ali Abdel Rahman. et al*, (S3-93-Cr-18l (MBM);
>
> (C) All information pertaining to my name that might be in any file (Central or Field or Others) that was the source of the information pertaining to my name that was mentioned in the above-mentioned Price Declaration;
>
> (D) All the information that is pertaining to my name or referring to it that might be found in any Central or Field file.

*Id.*; Sec. Am. Compl. Ex. 7. On February 18, 2014, the CIA informed Plaintiff that, based on his correspondence, it would open two new Requests. Shiner Decl. ¶ 8; CIA Ex. G. Request "A" was assigned Request No. F-2011-01562A, but the CIA also informed Plaintiff that this Request was duplicative and had already been addressed as part of Request No. F-2011-01562. *Id.* The CIA further informed Plaintiff that it construed Requests B–C as made under the Privacy Act, assigning them Request Nos. P-2014-00346, collectively. Sec. Am. Compl. at 5; Sec. Am. Compl. Ex. 8. The CIA also requested additional information regarding Plaintiff's alien permanent registration number, which he provided. Sec. Am. Compl. at 6; Sec. Am. Compl. Ex. 9.

On May 26, 2015, Plaintiff requested an update on his appeal and asked for a response to Request No. P-2014-00346. Shiner Decl. ¶ 9; CIA Ex. H. On June 15, 2015, the CIA responded that it was preparing his case for appeal. Shiner Decl. ¶ 9; CIA Ex. I. Plaintiff states that he submitted (1) a second expedited processing request on August 4, 2015, Sec. Am. Compl. at 7; Sec. Am. Compl. Ex. 13, and (2) additional appeals regarding the CIA's lack of response on

November 19, 2015 and January 26, 2016, Sec. Am. Compl. at 7–8; Sec. Am. Compl. Exs. 14, 15. The CIA avers that it did not receive the last three requests until this case was filed. Shiner Decl. ¶ 9. Sometime thereafter, based on information Plaintiff submitted in this case, the CIA was able to review new identifying details regarding Exhibit C, gleaned from the opinion in *United States v. Rahman*, *et al.*, 870 F. Supp. 47 (S.D.N.Y. 1994). Shiner Decl. ¶¶ 11–12. It then located Exhibit C based on this new information. *Id.* The CIA now withholds this document under Exemptions 1 and 3. *See id.* ¶¶ 13–19.

The CIA contends that Request No. P-2014-00346 is not at issue in this litigation because the "allegations in the complaint against [CIA] pertain only to [Plaintiff's] request for 'Exhibit (C)' in the FOIA request." *Id.* ¶ 10. It argues that because Plaintiff only specifically discusses the withholding of Exhibit C in his *ad damnum* clause, he has failed to raise Request No. P-2014-00346 as an issue in this case, and therefore the CIA declines to address it. *See id.* In response, Plaintiff argues that he does, in fact, discuss Request No. P-2014-00346 in other areas of his Second Amended Complaint, and that the CIA should have been on notice. Pl.'s First Supp. Opp. at 5. While his allegations are not a model in clarity, the Second Amended Complaint discusses, in certain detail, the history and nature of Request No. P-2014-00346. *See* Sec. Am. Compl. at 5–7. Plaintiff also attaches relevant exhibits in support. *See* Sec. Am. Compl. Exs. 7–10. Complaints filed by *pro se* litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Therefore, even if Plaintiff did not include Request No. P-2014-00346 as part of his *ad damnum*, it may be inferred that he intended to raise it in this matter. Therefore, the CIA has not yet completely addressed all of Plaintiff's claims and summary judgment as to all claims is not yet appropriate.

FOIA/Privacy Act Request No. FOIA-2014-02098

On April 24, 2014, EOUSA received two FOIA/PA Requests from Plaintiff, dated April 10, 2014. Stone Decl. ¶ 5; EOUSA Ex. B. EOUSA elected to treat the two letters as a single FOIA request, assigning them Request No. 2014-02098. In his first letter, Plaintiff provided the following details regarding his Request: "The government sent a letter to the defense counsel (dated July 22, 1994) declaring it filed a petition for non-disclosure of classified information, I am asking for a copy of that above mentioned (July 22, 1994) letter." *Id.* In other words, Plaintiff requested Exhibit C. *See id.* In his second letter, Plaintiff stated: "To be clear and reiterate, the record sought her[e]in is a single page, Exhibit C, that was attached to the Price Declaration that accompanied the government's July 1994 motion in the referenced criminal case, therefore, ther[e] is no need to search the entire case file." *Id.*

On April 30, 2014, EOUSA requested that the USAO-SDNY conduct a search for the requested records. Stone Decl. ¶ 6. After conducting its initial search, USAO-SDNY indicated that it had located 281 boxes of potentially responsive records and that it would take approximately 92 hours to conduct a search. Stone Decl. ¶ 8.

On February 11, 2015, EOUSA notified Plaintiff that the estimated search fee was $2,576.00. *Id.* ¶ 9; EOUSA Ex. C. Since the fee exceeded $25.00, EOUSA advised Plaintiff that work would not be completed until he agreed to pay the anticipated fees pursuant to 28 CFR 16.11(e). *Id.* However, after reviewing the "*Rahman*" docket (*Elgabrowny*, *et al.*, No. 93-cr-00181), the USAO-SDNY FOIA coordinator was able to limit his search to a few boxes, thus reducing the projected hours and fees. Stone Decl. ¶ 10.

On June 17, 2015, June 30, 2015, and September 22, 2015, EOUSA sent Plaintiff letters notifying him that USAO-SDNY would now only require approximately two hours of search time, and EOUSA now estimated the search fee at $80.00. Stone Decl. ¶ 11; EOUSA Exs. D–F. Again, EOUSA advised Plaintiff the Request would not be considered received and work would not be completed until Plaintiff agreed to pay the fee in accordance with 28 CFR 16.11(e). Plaintiff was allotted 30 days to respond or suffer administrative closure. *Id.*

On September 17, 2015, EOUSA received a letter from Plaintiff modifying his Request. Stone Decl. ¶ 12; EOUSA Ex. G. Plaintiff stated that he was seeking "a copy of Exhibit C that was attached to the 1994 CIA Price Declaration that was submitted by the government to the District Court on 1994 for in [] camera review of classified information[.]" Plaintiff also requested expedited processing and a fee waiver. *Id.* On October 6, 2015, EOUSA received a letter from Plaintiff inquiring regarding the status of his demands for a fee waiver and expedited processing. Stone Decl. ¶ 13; EOUSA Ex. H. On October 14, 2015, Plaintiff agreed "to pay the $80 for the two hours search fee." Stone Decl. ¶ 14; EOUSA Ex. I.

On December 3, 2015, EOUSA notified Plaintiff that his request for a fee waiver was denied because it did not meet the requirements of 28 CFR § 16.11(k). Stone Decl. ¶ 15; EOUSA Ex. J. On December 28, 2015, Plaintiff sent a letter inquiring as to the status of his Request and again requesting expedited processing. Stone Decl. ¶ 16; EOUSA Ex. K. On February 10, 2016, EOUSA denied expedited processing. Stone Decl. ¶ 17; EOUSA Ex. I.

On February 23, 2016, EOUSA notified Plaintiff that USAO-SDNY had completed its search and was unable to locate Exhibit C. *See* Stone Decl. ¶ 20; *see also* EOUSA Ex. N. USAO-SDNY later learned, and informed EOUSA, that Exhibit C existed and had been filed under seal. Stone Decl. ¶ 21. On May 3, 2016, EOUSA sent a supplemental response to

Plaintiff, providing him with that information and stating that it was prohibited from publicly disclosing sealed information. *Id.* ¶ 22; EOUSA Ex. O.

On April 26, 2016, Plaintiff filed an administrative appeal with OIP.[4] Stone Decl. ¶ 23; EOUSA Ex. P. On June 6, 2016, OIP affirmed EOUSA's determinations. Stone Decl. ¶ 24; EOUSA Ex. Q. In early November 2016, OIP contacted EOUSA and recommended that it send a discretionary release to Plaintiff. Stone Decl. ¶ 25. More specifically, EOUSA stated, "Plaintiff sought a July 22, 1994, letter that the government [gave] to the defense counsel; however, because there was no such letter to be found, OIP recommended that EOUSA make a discretionary release of a May 26, 1994[] letter that appeared to be responsive to Plaintiff's FOIA request." *Id.* On November 9, 2016, EOUSA sent Plaintiff a second supplemental FOIA response by releasing, in part, one page and releasing, in full, one page, of the May 26, 1994 letter. Stone Decl. ¶ 26; EOUSA Ex. R. EOUSA withheld the name and signature of a government attorney associated with Plaintiff's prosecution, invoking FOIA Exemptions 5 U.S.C. §§ 552(b)(6) and (7)(C). *Id.*

Plaintiff points out, and the court agrees, that EOUSA's statement is confusing. *See* Pl.'s Opp. at 9; Pl.'s Sec. Am. Compl. Ex. 36. EOUSA indicates that "Exhibit C had been filed under seal," and therefore it could not release the document. Stone Decl. ¶¶ 21–2; EOUSA Ex. O. However, shortly thereafter, EOUSA indicated that it could not find any such document, and instead proposed the release of the May 26, 1994 letter. Stone Decl. ¶ 25; *id.* ¶ 25 n.3. In reviewing the docket entries in *Elgabrowny*, No. 93-cr-00181, it appears that Plaintiff was requesting documents relating to ECF No. 675, and EOUSA instead released portions of a

---

[4] Plaintiff also states that he filed a few other appeals with OIP. These appeals were either addressed, superseded, or rendered moot. *See* Sec. Am. Compl. at 11–14.

document relating to ECF No. 250. *See* Stone Decl. ¶ 27; EOUSA Ex. S; Pl.'s Opp. at 9. This is doubly confusing because both entries relate to letters and declarations of Robert S. Khuzami, rather than Hugh Price. *See Elgabrowny*, No. 93-cr-00181at ECF Nos. 250, 675. While EOUSA found that the May 26 letter was responsive, questions remain regarding the existence and status, if any, of "Exhibit C," and which of these two letters, if any, was attached thereto. *See* Stone Decl. ¶ 25.

Plaintiff filed an administrative appeal on January 5, 2017, alleging failure to release Exhibit C, and the July 22, 1994 letter. *Id*. ¶ 27; EOUSA Ex. S. On May 12, 2017, OIP affirmed EOUSA's determinations. Stone Decl. ¶ 28; EOUSA Ex. T.

FOIA/Privacy Act September 30, 2015 (Unassigned) & Request &No. FOIA-2016-04133

Plaintiff attests that he submitted another FOIA/PA Request and demand for fee waiver and expedited processing to EOUSA on September 30, 2015, requesting "a copy of the 1995 FBI agents['] hand [written] notes of interviews with the mastermind of the 1993 WTC bombing conspiracy (Abdul-Basit Mahmoud Abdul Karim) also known as [Ramzi Ahmad Yousef]." Sec. Am. Compl. at 15; Sec. Am. Compl. Ex. 37; Pl.'s Opp. at 9–12. He specifically requested that EOUSA search the files of its field offices in the Southern District of New York. He indicates that he sent this Request via certified mail with return receipt, and that he never received a response. *See id.*

Plaintiff filed an administrative appeal with OIP on December 21, 2015, asserting that EOUSA had not yet responded to his FOIA request. Stone Decl. ¶ 18. On February 17, 2016, OIP denied Plaintiff's administrative appeal. Stone Decl. ¶ 18; EOUSA Ex. M.; Sec. Am. Compl. at 17; Sec. Am. Compl. Ex. 39; Pl.'s Opp. at 10. In its findings, OIP informed Plaintiff that EOUSA was currently processing his FOIA Request, and his demand for fee waiver was

moot because EOUSA had already responded on December 3, 2015. It appears that Plaintiff was attempting to appeal the lack of response to Request No. FOIA-2016-04133, while OIP interpreted this appeal to be related to his first Request, No. 2014-02098. *See id.*

On September 1, 2016, Plaintiff submitted a "supplement" to Request No. FOIA-2016-04133, additionally seeking handwritten agent "notes of interviews with Ramzi Yousef that took place after his extradition and return back to the U.S[.]" Sec. Am. Compl. at 17; Sec. Am. Compl. Ex. 40-A; Pl.'s Opp. at 10. On October 14, 2016, EOUSA treated the supplement as a new request, assigning Request No. FOIA-2016-04133. Sec. Am. Compl. at 17; Sec. Am. Compl. Ex. 40-B; Pl.'s Opp. at 10. EOUSA denied the Request, indicating that it sought information from a third party without (1) an authorization and consent from Yousef, or (2) proof of Yousef's death, or (3) a justification that the public interest in disclosure outweighed Yousef's personal privacy. EOUSA also raised Exemptions (b)(6) and 7(C). *Id.* Plaintiff claims he appealed this denial to OIP on October 24, 2016 and has received a response to date. Sec. Am. Compl. at 17; Sec. Am. Compl. Ex. 40-C; Pl.'s Opp. at 10. EOUSA does not address the unassigned September 30, 2015 Request or Request No. FOIA-2016-04133 and its related appeal in its pleadings.

### III. STANDARD OF REVIEW

In a FOIA case, a district court reviews the agency's decisions *de novo* and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *Military Audit Project v. Casey*, 656 F. 2d 724, 738 (D.C. Cir. 1981). "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F. 3d 521, 527 (D.C. Cir. 2011).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it can affect the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy,* 813 F. 2d 1236, 1241 (D.C. Cir. 1987).  In the FOIA context, "the sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" in order for summary judgment to be inappropriate. *Weisberg v. Dep't of Justice*, 627 F. 2d 365, 371 n.54 (D.C. Cir. 1980) (internal quotation marks omitted).  In assessing a defendant's motion, a court must "view the facts and draw reasonable inferences in the light most favorable to a plaintiff. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

In FOIA cases, summary judgment may be granted on the basis of an agency declaration. *Judicial Watch v. U.S. Secret Serv.*, 726 F. 3d 208, 215 (D.C. Cir. 2013) (citation omitted). Agency declarations are afforded a "presumption of good faith" and can be rebutted only with evidence that the agency did not act in good faith. *Defenders of Wildlife v. 77 U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  However, a plaintiff cannot rebut the good faith presumption afforded to an agency's supporting affidavits through "purely speculative claims . . ." *SafeCard Servs. v. SEC*, 926 F. 2d 1197, 1200 (D.C. Cir. 1991) (citation omitted).

In a Privacy Act access case, a court may similarly rely on agency affidavits or declarations to enter summary judgment. *See Chambers v. U.S. Dep't of the Interior*, 568 F. 3d 998, 1003 (D.C. Cir. 2009). At the summary judgment stage, where the agency has the burden to show that it acted in accordance with the statute, a court may rely on a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched. *Jimenez v. Executive Office for U.S. Attorneys*, 764 F. Supp. 2d 174, 179–80 (D.D.C. 2001) (citing *Chambers,* 568 F. 3d at 1003). The burden is always on the movant to demonstrate why summary judgment is warranted. *Id.* A district court "must determine for itself that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law, and then 'should state on the record the reasons for granting or denying the motion.'" *Id.* at 508–09 (quoting Fed. R. Civ. P. 56(a)).

## IV. ANALYSIS

i.     <u>Adequacy of the Searches</u>

The adequacy of an agency's search is measured by a standard of reasonableness under the attendant circumstances. *Truitt v. U.S. Dep't of State*, 897 F. 2d 540, 542 (D.C. Cir. 1990). To satisfy its burden, an agency must show that it "has conducted a search reasonably calculated to uncover all relevant documents." *Elliott v. U.S. Dep't of Agric.*, 596 F. 3d 842, 851 (D.C. Cir. 2010) (quoting *Weisberg*, 705 F.2d at 1344). It may base its showing on affidavits or declarations submitted in good faith, *see Truitt*, 897 F.2d at 542, provided that these affidavits or declarations explain in reasonable detail the scope and method of the search. *See Morley v. CIA*, 508 F. 3d 1108, 1116 (D.C. Cir. 2007) (internal citations omitted). "In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance . .

." *North v. U.S. Dep't of Justice*, 774 F. Supp. 2d 217, 222 (D.D.C. 2011) (citing *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982)). Agencies must show that their searches for responsive records "us[ed] methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F. 2d 57, 68 (D.C. Cir. 1990). "A search does not have to be exhaustive, and whether a search is adequate is determined by methods, not results . . . [and an] agency's failure to locate a specific responsive document will not, on its own, render an otherwise reasonable search inadequate." *Brown v. FBI*, 675 F. Supp. 2d 122, 125–26 (D.D.C. 2009).

Once the agency has provided a "reasonably detailed" affidavit, the burden shifts to the FOIA requester to produce "countervailing evidence" suggesting that a genuine dispute of material fact exists as to the adequacy of the search. *Morley*, 508 F.3d at 1116 (internal citation and quotation marks omitted).

FBI

FBI's affiant, David M. Hardy, Section Chief of the Record/Information Dissemination Section Records Management Division ("RMD"), supervises "12 Federal Bureau of Investigation Headquarters ("FBIHQ") units and two field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA." Hardy Decl. ¶¶ 1–2. He attests that his Declaration is based upon his personal knowledge and made in his official capacity. *Id.* ¶ 2.

Hardy identifies and details the record systems and locations used for each of the searches, why the relevant information would be in those locations and systems, the search terms used, and the scope of the searches. *Id.* ¶¶ 18–27. He further details the FBI's Central Records

System ("CRS") and the other internal electronic, integrated case management systems including the Automated Case Support ("ACS"), the Universal Index ("UNI"), and "Sentinel," and explains the reasoning behind the searches of those databases. *Id.*

More specifically, the Records Dissemination Section, ("RIDS") conducted a search of the CRS for potentially responsive records, while employing the UNI application of ACS by using information directly from Plaintiff's Requests, including Yousef's name, date of birth, and its variations and dates of requested interviews. *See id.* Records were searched from all FBI headquarters, field offices, and attaché offices. *Id.* ¶¶ 18, 26. Additionally, the FBI located the original investigative file relevant to the 1993 World Trade Center bombing. *Id.* ¶ 26. It found typed "FD-302 interview forms," but did not find handwritten notes from the requested interviews. *Id.* FBI staff also contacted investigative personnel and the special agent who were assigned to the World Trade Center bombing investigation and prosecution of Yousef but found no additional documents. *Id.* ¶¶ 26–7. The methodology of each search, and results relating thereto, are thoroughly explained. *See id.* ¶¶ 18–27. In addition to being reasonably detailed, the Declaration appears to have been made in good faith.

In opposition, Plaintiff broadly alleges that the FBI engaged in bad faith practices and intentionally ignored responsive records. *See* Pl.'s Opp. at 15. He proffers no credible evidence to support this contention. He also argues that the FBI did not specifically indicate that it searched section "1A" of the original investigative file. *Id.* at 16. This argument is meritless, because FBI attests that it searched the entire original file. Hardy Decl. ¶ 26.

Plaintiff also cites to Hardy declarations from other cases, including *Cina Ryan v. FBI*, 113 F. Supp. 3d 356 (D.D.C. 2015). Pl.'s Opp. at 17–18. He alleges that in *Ryan*, Hardy testified that if FBI documents have been transferred to another federal agency, "a CRS search

would reveal these facts." *See id.* at 17. Plaintiff appears to take issue with the fact that FBI did

not address whether the requested documents were transferred to other agencies. *See id.* at 17–

18. This contention is immaterial, primarily because the FBI conducted a CRS search, and given

the presumption of good faith, would have attested to or pursued any indicia of transfer. *See*

*Defenders of Wildlife*, 623 F. Supp. at 87.

Plaintiff also alleges that the FBI did not search its Electronic Case File ("ECF"). In

support, he cites to piecemeal evidentiary findings from *Trentadue v. FBI*, No. 2:08-cv-788 (D.

Utah 2008). *See* Pl.'s Opp. at 18; Pl.'s Opp. Ex. 11. Based on Plaintiff's Exhibit 11, it appears

that the United States District Court for the District of Utah found, based on the specific

documents requested and discrete details of that particular case, that the FBI should have

searched ECF. *See* Pl.'s Opp. Ex. 11. However, Plaintiff's reliance on these findings is

speculative and he misinterprets an agency's burden under FOIA.

Here, the FBI searched sites where records relating to Plaintiff's Requests, if they existed,

were reasonably likely to be found. *See* Hardy Decl. ¶¶ 18–27. "CRS is indexed in a manner

which meets the FBI's investigative needs and priorities and allows FBI personnel to reasonably

and adequately locate pertinent files in the performance of their law enforcement duties. The

general indices are arranged in alphabetical order and comprise an index on a variety of subject

matters to include individuals, organizations, events, or other subjects of investigative interest

that are indexed for future retrieval." *Id.* ¶ 20.

Further, FBI avers that

> ACS and the next generation Sentinel system are relied upon by the FBI daily
> to fulfill essential functions such as conducting criminal, counterterrorism,
> and national security investigations; background investigations; citizenship
> and employment queries, and security screening, to include Presidential
> protection. *Id.* ¶ 22 n.5. ACS implementation built upon and incorporated
> prior automated FBI indices; therefore, a search employing the UNI

application of ACS encompasses data that was already indexed into the prior automated systems superseded by ACS. As such, a UNI index search in ACS is capable of locating FBI records created before its 1995 FBI-wide implementation to the present day in both paper and electronic format. Currently, UNI consists of approximately 118 million searchable records and is updated daily with newly indexed material.

*Id.* ¶ 23. Moreover, "UNI is the automated index of the CRS and provides all offices of the FBI a centralized, electronic means of indexing pertinent investigative information to FBI files for future retrieval via index searching." *Id.* ¶ 23. The FBI also searched the original hard-copy investigative file and spoke with personnel assigned to the case. *Id.* ¶¶ 26–7. These coordinated searches revealed no responsive records. *Id.* ¶¶ 17, 26–8.

These efforts were diligent and reasonable. *See, e.g., Rosenberg v. U.S. Dep't of Immigration & Customs Enforcement*, 13 F. Supp. 3d 92, 102–05 (D.D.C. 2014) (concluding that it was proper for the FBI to consider CRS search results to determine whether "it had searched all locations where potentially responsive records were reasonably likely to be located."). Hardy expressly attested that the searches were "adequate [and] reasonably likely to locate records responsive to [P]laintiff's request." *Id.* ¶ 28; *see also Mobley v. CIA*, 806 F.3d 568, 584 (D.C. Cir. 2015) (finding the FBI's search of the CRS to be adequate because of, in part, an agency declaration asserting that the FBI's search was "reasonably likely to produce the information [plaintiff] requested.") (citation omitted). Moreover, "a search is generally adequate where the agency has sufficiently explained its search process and why the specified record systems are reasonably likely to contain responsive records." *Id.* at 582 (citation omitted).

Mere speculation that documents might be found in another database is not enough to render an agency's search inadequate. *See Meeropol v. Meese*, 790 F.2d 942, 954 (D.C. Cir. 1986) ("In the absence of more concrete evidence from appellants that such files actually exist . . . speculative assertions cannot serve as the basis for vacating the grant of partial summary

judgment."). Here, Plaintiff has failed to show, beyond speculation, that a text search of ECF would produce responsive documents. Plaintiff's sole justification is his reliance on the findings in *Trentadue. See* Pl.'s Opp. at 18; Pl.'s Opp. Ex. 11. He attaches selected pages of Judge Clark Waddoups' findings in that matter, in which the court determined that an ECF search would have been more appropriate for the documents requested. *See id.*

It appears that *Trentadue* dealt with FOIA requests concerning the 1995 Oklahoma City bombing investigation. Certain documents in that case were apparently misfiled or filed alternatively, and therefore may have been missing from the original case file. According to the *Trentadue* findings, those specific documents would have only been discovered through a manual search of the ECF index. *See* Pl.'s Opp. Ex. 11. However, *Trentadue* is an entirely different case, involving entirely different documents. Even if applicable here, the findings in that matter are not only case-specific, but provided out of context, and are nearly ten years old. *See id.* Here, there is no information indicating that the requested documents may have been misfiled or withheld from the case file. Moreover, a plaintiff's search preferences cannot dictate the reasonableness of the scope of an agency's FOIA search. *See Mobley*, 806 F.3d at 582 ("[U]nder [the plaintiff's] approach, which would allow a requester to dictate, through search instructions, the scope of an agency's search, the reasonableness test for search adequacy long adhered to in this circuit would be undermined.").

Plaintiff argues that it is FBI policy to retain copies of interview notes, and therefore the documents must exist. *See* Pl.'s Opp. at 16–17. However, assuming *arguendo* that that these interview notes once existed, "[t]he fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has

retained it." *Greenberg v. Dep't of Treasury*, 10 F. Supp. 2d 3, 13–14 (D.D.C. 1998) (citing *Miller v. Dep't of State*, 779 F.2d 1378, 1385 (8th Cir. 1985)).

Lastly, Plaintiff argues that because he was born in 1950, the FBI should have performed a manual search. Pl.'s Opp. at 22. This is based on the FBI's assertion that "[a] search of the manual indices is triggered for requests on individuals if the person was born on or before January 1, 1958; and for requests seeking information about organizations or events on or before January 1, 1973. In this case, Plaintiff was born in 1969; therefore, any responsive records would have been captured through a UNI search." Hardy Decl. ¶ 23 n. 6. However, it is clear that Hardy was actually referring to Yousef's date of birth, not Plaintiff's, as Yousef was the sole subject of Plaintiff's Requests. *See* FBI Exs. A, B, G. Plaintiff did not request any information relating to himself in his FBI FOIA/PA Requests, and therefore his own date of birth is irrelevant.

Plaintiff has failed to proffer facts or evidence to controvert the FBI's assertions and the court finds that its searches were reasonable. *See White v. DOJ*, 840 F. Supp. 2d 83, 89 (D.D.C. 2012).

EOUSA

While EOUSA submitted a Declaration with regard to the adequacy of its searches, the submission does not inspire confidence that EOUSA's search was reasonable under the attendant circumstances. The declaration is executed by Princina Stone, an Attorney Advisor responsible for acting as a liaison between various DOJ divisions responding to FOIA and Privacy Act requests. Stone Decl. ¶ 1. In support, she states that

> EOUSA determined that USAOSDNY had records potentially responsive to
> Plaintiff's request because Plaintiff indicated in his FOIA request that the
> information was related to his criminal case that was prosecuted in USAO-
> SDNY. USAO-SDNY FOIA staff conducted searches for records responsive

> to Plaintiff's FOIA requests. All responsive records located were scanned and uploaded into the AccessPro Case Management System for review by EOUSA FOIA/PA staff. To the best of my knowledge, the searches of the USAO-SDNY were reasonably calculated to identify records responsive to Plaintiff's FOIA requests. I am unaware of any other locations where EOUSA could have searched and found records that are within the custody, control, or possession of EOUSA and/or USAO-SDNY. I reviewed all responsive records after they were processed by EOUSA FOIA/PA paralegal staff . . .

*Id.* ¶ 33. Aside from this information, Stone provides little to no detail regarding the searches. Stone mentions AccessPro but includes no other particulars to explain the nature of that particular system, or how it was specifically utilized in these searches. *See id.* Stone offers no other details regarding the search methodology, or what sources were investigated. It follows that the court also has no information as to *why* these unidentified sources were searched as a result of the request. The search terms are not provided and cannot be inferred. A declaration must explain the scope and method of the agency's search in a non-conclusory fashion. *Nat'l Sec. Counselors v. C.I.A.,* 849 F. Supp. 2d 6, 11 (D.D.C. 2012) (internal quotation marks omitted).

Although agency affidavits are afforded a presumption of good faith, that presumption can be rebutted when "a review of the record raises substantial doubt" that certain materials were overlooked. *Valencia–Lucena v. U.S. Coast Guard*, 180 F. 3d 321, 326 (D.C. Cir. 1999) (citing *Founding Church of Scientology of Washington D.C. v. Smith*, 721 F. 2d 828, 837 (D.C. Cir. 1983)); *see also Truitt*, 897 F.2d at 542 ("If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper.").

Here, the descriptions of the search are too cursory to persuade the court that the search was adequate. *See Strunk v. U.S. Dep't of State*, 770 F. Supp. 2d 10, 17 (D.D.C.2011) (finding that "cursory description" of agency's search that identified the reasonably likely location of responsive records without additional detail "provide[d] no basis from which the [c]ourt [could]

determine whether the search was adequate under the circumstances").  Because Stone's declaration lacks specificity and clarity, and because EOUSA has also failed to address the additional Request No. FOIA-2016-04133 and the unassigned September 30, 2015 Request, the court finds that summary judgment is inappropriate.

CIA

The CIA submits the Declaration of Antoinette B. Shiner, the Information Review Officer for the Litigation Information Review Office at the CIA.  Shiner Decl. ¶¶ 1–2.  Shiner is responsible for the classification review of CIA documents and information that may be subject to court proceedings or requests under FOIA/PA.  *Id*. ¶ 3.  She attests that the CIA conducted a reasonably calculated search which resulted in locating Exhibit C, the sole document requested pursuant to Request Nos. F-2011-001562.  *Id*. ¶ 12.  As a basis for its search, CIA relied upon Judge Michael Mukasey's description of Exhibit C in *Rahman*, 870 F. Supp. 47.  *Id.*  The court finds that the CIA has discharged its obligation under FOIA regarding Request No. F-2011-001562, because it adequately searched and located the sole document requested.  However, the CIA provides no information regarding its search, if any, regarding to Request No. P-2014-00346, and therefore the court denies summary judgment as to that Request.

ii.      CIA's Use of FOIA Exemption 3[5]

Exemption 3:

---

[5] The court need not consider the applicability of the Privacy Act and its exemptions, as an agency may not rely exclusively "on any exemption in [the Privacy Act] to withhold from an individual any record which is otherwise accessible to such individuals under the provisions of [FOIA]."  5 U.S.C. § 552a(t)(2).  Because the CIA properly reviewed and released responsive records under FOIA, the court will only address the justifications for withholding information thereunder. 5 U.S.C. § 552a(b)(2); *Greentree v. United States Customs Serv.*, 674 F.2d 74, 79 (D.C. Cir. 1982).

CIA relies on Exemption 3,[6] 5 U.S.C. § 552(b)(3), for withholding Exhibit C. CIA Mem. at 8–11; Shiner Decl. ¶¶ 17–19. Shiner avers that Exhibit C is properly withheld under Section 102(A)(i)(1) of the National Security Act of 1974, 50 U.S.C. § 3024(i)(1), which provides that the Director of National Intelligence "shall protect intelligence sources and methods from unauthorized disclosure." *Id.* Under the direction of the Director, pursuant to Section 102A and consistent with Section 1.6(d) of Executive Order 12,333, the CIA is authorized to protect CIA sources and methods from unauthorized disclosure. Shiner Decl. ¶ 18.

Pursuant to Exemption 3, an agency may withhold information "specifically exempted from disclosure by statute," so long as the statute

> (A)(i) requires [withholding] from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and

> (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(3). To prevail on summary judgment, the agency need only show that the statute claimed is contemplated by the Exemption and that the withheld material falls within the statute. *See CIA v. Sims*, 471 U.S. 159, 167–68 (1985); *see also Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009). The "purpose of Exemption 3 [is] to assure that Congress, not the agency, makes the basic nondisclosure decision." *Ass'n of Retired R.R. Workers, Inc. v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987).

The CIA attests that Exhibit C is classified as "secret," in order to protect both national security and potential CIA sources. CIA Mem. at 5; CIA Stmt. ¶ 10; Shiner Decl. ¶¶ 16, 18–19.

---

[6] CIA also relied upon FOIA Exemption 1, 5 U.S.C. § 552(b)(1), to withhold Exhibit C. CIA's Mem. at 6–8; Shiner Decl. ¶¶ 14–16. The court need not consider the applicability of Exemption 1, because the court has found that CIA properly withheld the document under Exemption 3. *See Gardels v. CIA*, 689 F.2d 1100, 1107 (D.C. Cir. 1982).

Shiner states that Exhibit C "is a CIA cable that contains intelligence provided by clandestine human intelligence source which, if disclosed, could reveal the sources' identities." Shiner Decl. ¶ 16. Further, she attests that revelation of these source(s) or information could

> [s]ubject [them] to economic reprisals, harassment, imprisonment, and even death. In addition, such disclosure can place in jeopardy the lives of individuals with whom the source has had contact, including his or her family and associates. Disclosure of this type of information could further reduce the willingness or ability of these specific sources to provide timely information and assistance to the U.S. government, and dissuade future sources from doing so. Additionally, because "Exhibit C" is a CIA cable, it contains administrative information that reveals CIA's organizational structure, including routing data, abbreviations for specific offices within CIA, names of CIA offices, and contact information, the disclosure of which could lead to exploitation or infiltration by foreign governments or hostile actors.

*Id.* CIA also references *Rahman*, 870 F. Supp. 47, in its evaluation. *Id.* ¶ 11. In that opinion, the court had an opportunity to review the Price Declaration, and the exhibits attached thereto, including Exhibit C. *See Rahman* 870 F. Supp. At 50–1. The government filed a motion pursuant to the Classified Information Procedures Act, 18 U.S.C. App. § 4, to protect information contained in those exhibits. *See id.* at 49. The court found that Exhibit C contained information identifying "[a] person with whom the government has contact [who] may possess information exculpatory of Elgabrowny." *Id.* at 51. The court went on:

> With respect to the four exhibits attached to the Price declaration, each is stamped "Secret." The declaration itself establishes in detail the affiant's own authority in overseeing the kinds of activities the documents reflect and assuring that proper classification procedures are followed (Price Decl. ¶¶ 1–2, 12), as well as how the intelligence gathering activities and/or the national security of the United States could be harmed by disclosure of either what is in the classified documents or how that information was gathered. (Price Decl. ¶¶ 3–11, 13–38) In particular, disclosure of the documents would reveal intelligence sources (Price Decl. ¶¶ 15–18); methods of gathering intelligence (Price Decl. ¶¶ 19–34); and information that could compromise the foreign relations of the United States (Price Decl. ¶¶ 35–37).

*Id.* at 50. The court ruled that the government was required to pursue its *Brady* obligation diligently, and to make its determinations known to the court, and determined that if the person identified in the exhibit were to testify at trial in a manner that inculpated Elgabrowny, the court would decide how to make that information available to him. *Id.* at 51–2. Shiner attests that the *Rahman* court ultimately held that Exhibit C was properly classified and need not be disclosed. Shiner Decl. ¶ 12 n.1.

Here, Section 102A(i)(1) of the National Security Act permits invocation of Exemption 3. *See ACLU v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011); *Larson*, 565 F.3d at 865. The court also finds that Exhibit C relates to "intelligence sources and methods." *Sims*, 471 U.S. at 167–68. Exhibit C, therefore, falls within the expansive ambit of Section 102A(i)(1)'s protection of "intelligence sources and methods." *Id. at* 169–70 (holding that Section 102A(i)(1)'s contains a "broad sweep" of statutory language," and lacks any "limiting language" and that "Congress simply and pointedly protected all sources of intelligence that provide, or are engaged to provide, information the Agency needs to perform its statutory duties with respect to foreign intelligence. The plain statutory language is not to be ignored.").

The DC Circuit has also interpreted Section 102A(i)(1) broadly, holding that material is properly withheld under the Act if it "relates to intelligence sources and methods," *Larson*, 565 F.3d at 865, or "can reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods." *Halperin v. CIA*, 629 F.2d 144, 147 (D.C. Cir. 1980). The National Security Act has been held to constitute a "near-blanket FOIA exemption," *Whalen v. U.S. Marine Corps*, 407 F. Supp. 2d 54, 59 n.5 (D.D.C. 2005), which includes the "power to withhold superficially innocuous information on the ground that it might enable an observer to discover the identity of an intelligence source [or method]." *Sims*, 471 U.S. at 178. The Supreme Court

has advised that "it is the responsibility of the [intelligence community], not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the . . . intelligence-gathering process." *Id.* at 180.

The National Security Act does not require the CIA to find that disclosure of the information would be expected to harm national security. *See Associated Press v. FBI*, 265 F. Supp. 3d 82, 97 (D.D.C. 2017) ("[Section 102A(i)(1)] presents an easier hurdle for the agency under Exemption 3 than does Executive order 13526 under Exemption 1, in that it does not require the [agency] to determine that release of the information could reasonably be expected to result in damage to national security."). Nonetheless, the court finds that revealing the information in Exhibit C could reasonably be expected to cause serious damage to national security. *See* Shiner Decl. ¶¶ 16–18.

In response, Plaintiff argues that the sources and information contained in Exhibit C are likely publicly known and therefore "the CIA claim of the protection of source and metho[d]s should be considered moot." Pl.'s Supp. Opp at 4; Pl.'s Sec. Supp. Opp. at 4; Pl.'s Third Supp. Opp. at 4. He relies on *Lawyers Committee for Human Rights v. I.N.S.*, 721 F. Supp. 552, 569 (S.D.N.Y. 1989) and *Washington Post v. U.S. Dept. of Defense*, 766 F. Supp. 1, 11 (D.D.C. 1991), in arguing that information released to the press should be released under FOIA. However, both cases discuss the release of information under Exemption 1, not Exemption 3. *See id.* In fact, *Washington Post* highlights this distinction, indicating that information withheld pursuant to Exemption 3 may be available to the press or in the public sphere, but this fact bears no legal significance in favor of release. *Wash. Post*, 766 F. Supp. at 11 (citing *Pfeiffer v. C.I.A.*, 721 F. Supp. 337, 342 (D.D.C. 1989)) (quotation marks omitted).

Finally, Plaintiff argues that CIA failed to meet its segregability obligation. Pl.'s Sec. Supp. Opp. at 5; Pl.'s Third Supp. Opp. at 5. Under FOIA, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" from the requester. *Sussman v. U.S. Marshals Serv.*, 494 F. 3d 1106, 1117 (D.C. Cir. 2007). Here, the CIA "conducted a line-by-line, page-by-page review of the document at issue in this FOIA request and determined that no reasonably segregable part of [Exhibit C] could be released." Shiner Decl. ¶ 19. These representations are sufficient. *See Johnson v. EOUSA*, 310 F. 3d 771, 776 (D.C. Cir. 2002); *Loving v. Dep't of Defense*, 550 F.3d 32, 41 (D.C. Cir. 2008). Plaintiff has not provided any basis to question the good-faith presumption afforded to these representations. Thus, the court concludes that the CIA has satisfied its segregability obligations under FOIA.

The court finds that the CIA properly relied on Exemption 3 for the withholding of Exhibit C and FOIA Requests Nos. F-2011-01562 and F-2011-01562A.

## V. PLAINTIFF'S REQUESTS FOR RELIEF

i.   <u>Plaintiff's Cross Motion for Summary Judgment</u>

Plaintiff moves for summary judgment within his Opposition. Pl.'s Opp. at 1–2. Given that the FBI has met its burden for summary judgment, the court finds that Plaintiff's arguments for summary judgment lack merit, and thus his cross motion for summary judgment against the FBI is denied with prejudice.

For the same reasons, the court denies Plaintiff's cross-motion for summary judgment with prejudice as it relates to CIA Request Nos. F-2011-00156 and F-2011-01562A (Requests for Exhibit C). The court denies Plaintiff's cross-motion for summary judgment without prejudice as it relates to Request No. P-2014-00346. The CIA declined to address any issues

relating to Request No. P-2014-00346 because it contends that Plaintiff failed to place it at issue in his complaint. Shiner Decl. ¶ 10. The court disagrees, finding that Plaintiff addressed this Request as part of his complaint, but also finds that his pleading was far from a model in clarity. Therefore, the court will provide the CIA another opportunity to address Plaintiff's claims regarding Request No. P-2014-00346.

Plaintiff also moves for summary judgment against EOUSA. While the court has found that EOUSA's submissions are currently insufficient to warrant summary judgment in their favor, it also declines to grant Plaintiff's motion for summary judgment. There exist genuine disputes of material fact on both sides, and neither party is currently entitled to judgment as a matter of law pursuant to Fed. R. Civ. P. 56(a). Additionally, the court is aware of the strong judicial policy favoring adjudication on the merits of a case. *See Forman v. Davis*, 371 U.S. 178, 181–2 (1962); *Winston & Strawn v. McLean*, 843 F. 3d 503, 505 (D.C. Cir. 2016) (holding that, in a FOIA matter, even if the nonmoving party fails to respond to the motion for summary judgment, or portions thereof, a court cannot grant the motion for the reason that it was conceded). Given the expansive administrative record in this case, the length and difficulty of some of Plaintiff's filings, and the frequency of his FOIA/PA Requests, appeals, and attempted modifications, both parties' requests for summary judgment will be dismissed without prejudice to refiling, so that the court may be provided the full breadth of record information necessary to render a decision.

Finally, the court denies Plaintiff's Motion for Summary Judgment as to the State Department because it is not yet ripe. The State Department last proffered that it was still in the process of document review and potential disclosure(s) to Plaintiff. *See* Status Report, ECF No. 43.

ii.     Motions to Strike

Plaintiff has filed Motions to Strike Portions of the Stone Declaration and Hardy Declaration.  "[T]he decision to grant or deny a motion to strike is vested in the trial judge's sound discretion." *Riddick v. Holland*, 134 F. Supp. 3d 281, 285 (D.D.C. 2015) (citations omitted).  Courts generally disfavor granting such motions because they propose a drastic remedy.  *See Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd*., 647 F.2d 200, 201 (D.C. Cir. 1981) (per curiam).

Plaintiff argues that during his criminal trial, the FBI acknowledged that a summary of the requested interview notes existed.  MTS Hardy at 37–8.  The FBI argues that it did not acknowledge the existence of the specific notes requested by Plaintiff.  Hardy Decl. ¶ 17.  However, this disagreement is immaterial because FBI ultimately withdrew its *Glomar* response and searched for the notes.  *See id.*

Plaintiff again argues that Hardy was incorrect regarding his birthdate.  MTS Hardy at 38.  As discussed above, Hardy was referring to Yousef's birthday, as he was the only subject of the Requests.  *See* Hardy Decl. ¶ 23 n. 6; *see also* FBI Exs. A, B, G.

Finally, Plaintiff generally disagrees with the adequacy of FBI's search.  *See* MTS Hardy at 39.  The court has already found that the search was sufficient, and therefore Plaintiff's Motion to Strike Portions of the Hardy Declaration is denied.

In support of his Motion to Strike Portions of the Stone Declaration, Plaintiff argues that: (1) EOUSA appears to confirm and deny that it located the "July 22, 1994 letter," (2) the Declaration is devoid of information relating to Request No. No. FOIA-2016-04133, and (3) the Declaration is "false and fabricated."  MTS Stone at 33–5.  While the court agrees that the Stone Declaration contains some conclusory and confusing statements, and is missing certain

information, there is no evidence to indicate that it was executed falsely or in bad faith.  Courts generally grant motions to strike upon a showing that parts of a pleading were prejudicial or scandalous.  *See, e.g. Nwachukwu v. Rooney*, 362 F. Supp. 2d 183, 190 (D.D.C. 2005) (citation omitted).  "[A]bsent a 'strong reason for so doing,' courts will 'not tamper with pleadings.'" *Id.* (citation omitted).  Plaintiff has not shown that any parts of the declarations were prejudicial or scandalous, and the court therefore denies his Motion to Strike Portions of Stone Declaration.

  iii.  <u>Motions for In Camera Review & Discovery</u>

  Plaintiff files three Motions for In Camera Review and/or to Conduct Discovery.  His First and Second Motions request in camera review and discovery relating to the FBI's purported hand-written interview, as well as Exhibit C.  First Mot. In Cam. at 41–4; Sec. Mot. In Cam. at 45–6.  Plaintiff's Third Motion requests an in camera review of the CIA's retrieved Exhibit C. Third Mot. In Cam. at 1–3.

  First, the FBI searched its records and did not find any of the requested documents. Hardy Decl. ¶¶ 17, 26–8.  The court has found the search was adequate and, therefore, requests for in camera review would be fruitless.  In that same regard, Plaintiff's discovery request is tantamount to a request for the same records sought in his FOIA Requests.  "Discovery in FOIA is rare and should be denied where an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains."  *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F. 3d 312, 318 (D.C. Cir. 2006) (quoting *Schrecker v. U.S. Dep't of Justice*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002)).  The court has found that the Hardy Declaration was sufficient to meet the summary judgment standard, therefore Plaintiff's First and Second Motions for In Camera Review & Discovery are denied.

Second, this Circuit has set out criteria for determining the need for in camera review in FOIA/PA cases. *See Allen v. CIA*, 636 F. 2d 1287, 1293 (D.C. Cir. 1980), *abrogated on other grounds by*, *Founding Church of Scientology* 721 F. 2d at 831–32. These factors do not limit the court's discretion to decide whether to conduct in camera review, but provides a list of factors to consider. *Id.* at 1297. These factors include: (1) judicial economy, (2) the conclusory nature of the agency affidavits, (3) possible bad faith on the part of the agency, (4) whether the agency proposes in camera review, (5) disputes concerning the content of the document, and (6) the strong public interest in disclosure. *Id.* at 1297–299.

Plaintiff again argues that Exhibit C is segregable and that there is public interest in the release of the document. Third. Mot. In Cam. at 1–2. The court has already indicated that it disagrees with both of these positions. Considering the *Allen* factors, given the reasonably detailed nature of both the CIA Declaration regarding the reasons for withholding Exhibit C, the absence of any evidence of bad faith, and the lack of valid justification provided by Plaintiff supporting such relief, Plaintiff's Third Motion for In Camera Review is denied. *See id.*

## VI. CONCLUSION

For all of the foregoing reasons, FBI's Motion for Summary Judgment is GRANTED and the case against it is dismissed with prejudice.

CIA's Motion for Summary Judgment is GRANTED in part and DENIED in part. Specifically, CIA's motion for summary judgment and dismissal with prejudice is granted as to all claims relating to Request Nos. F-2011-00156 and F-2011-01562A and for the withholdings under Exemption 3, but summary judgment is denied without prejudice as to Request No. P-2014-00346. CIA shall file either a renewed motion for summary judgment, or in the alternative, a report addressing the status of production and (if applicable) proposing a briefing schedule, on

or before May 4, 2019. The motion or status report shall address FOIA/Privacy Act Request No. P-2014-00346.

EOUSA's Motion for Summary Judgment is DENIED without prejudice. EOUSA shall file either a renewed motion for summary judgment (with noted errors corrected), or in the alternative, a report addressing the status of production and (if applicable) proposing a briefing schedule, on or before May 4, 2019. The motion or status report and address FOIA/Privacy Act Request Nos. FOIA-2014-02098, FOIA-2016-04133, and the unassigned Request dated September 30, 2015.

Plaintiff's Cross-Motion for Summary Judgment is DENIED without prejudice. Plaintiff's Motions to Strike Portions of Declarations are DENIED. Plaintiff's Motions for In Camera Review and/or Discovery are DENIED.

The State Department shall file a report addressing the status of production and (if applicable) proposing a briefing schedule, on or before May 4, 2019.

An Order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Date: March 31, 2019

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge