# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IBRAHIM ELGABROWNY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-cv-00066 (TSC) |
| | ) | |
| CENTRAL INTELLIGENCE | ) | |
| AGENCY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# MEMORANDUM OPINION

## I. INTRODUCTION

Plaintiff Ibrahim Elgabrowny, proceeding *pro se*, has sued the Central Intelligence Agency ("CIA"), Department of Justice ("DOJ"), Executive Office of United States Attorneys ("EOUSA"), and the United States Department of State ("State Department"), alleging violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Privacy Act ("Privacy Act" & "PA"), 5 U.S.C. § 552a. Sec. Am. Compl., ECF No. 29 at 1.[1]

The DOJ, FBI, and EOUSA filed a Motion for Summary Judgment, ECF No. 45, on May 17, 2018. The CIA filed its own Motion for Summary Judgment, ECF No. 47, on June 25, 2018. Plaintiff filed Oppositions, ECF Nos. 53 ("Pl.'s MSJ Opp. I"), and then supplemented his Oppositions, ECF Nos. 55, 57.

---

[1] The court references the ECF-generated page numbers in citing to page numbers in Plaintiff's filings.

On March 31, 2019, the court (1) granted FBI's Motion for Summary Judgment; (2) granted in part and denied in part, without prejudice, CIA's Motion for Summary Judgment, and (3) denied without prejudice EOUSA's Motion for Summary Judgment. ECF Nos. 58, 59;[2] *Elgabrowny v. CIA*, 2019 WL 1440345 at *16 (D.D.C. Mar. 31, 2019).

In its Memorandum Opinion and Order, the court instructed EOUSA to file either a renewed motion for summary judgment, or alternatively, a status report addressing production and proposing a briefing schedule. *Id.* The court also specifically instructed EOUSA to fully address, in either the renewed motion or status report, FOIA/Privacy Act Request Nos. FOIA-2014-02098, FOIA-2016-04133, and the unassigned Request dated September 30, 2015. *Id.*

EOUSA filed a Renewed Motion for Summary Judgment, ECF No. 62, which is currently before the court. The Renewed Motion, however, inadequately addressed Request No. FOIA-2014-02098, and further failed to address FOIA-2016-04133 and the unassigned September 30, 2015 Request. Plaintiff filed an Opposition ("Pl.'s MSJ Opp. II"), ECF No. 67, to EOUSA's Renewed Motion which also includes a Fourth Motion for In Camera Review ("Pl.'s Mot. In Cam. IV"), ECF No. 67-1.

EOUSA then filed a Motion for Enlargement of Time to File Reply, ECF No. 75, which included a request to address the omissions from its Renewed Motion for Summary Judgment. The court granted EOUSA's Motion for Enlargement, *see* Jun. 6, 2019 Min. Ord., ordering it to file a reply in compliance with this court's order. The court also provided Plaintiff with an opportunity to address EOUSA's new arguments by way of a surreply. *Id.* EOUSA filed a

---

[2] Also pending before the court were Plaintiff's Cross Motion for Summary Judgment, Motions to Strike, and Motions for In Camera Review & Discovery. These Motions were denied. *See Elgabrowny* at *14–*16.

comprehensive Reply ("Def.'s Reply"), ECF No. 76, on January 22, 2020. Plaintiff finally filed a Surreply ("Pl.'s Surrep."), ECF No. 81, on March 20, 2020.

In its Renewed Motion and supplemental filings, EOUSA argues that it conducted adequate searches for responsive documents and satisfied its obligations under FOIA. For the reasons stated herein, EOUSA's Renewed Motion for Summary Judgment is GRANTED. Plaintiff's Fourth Motion for In Camera Review is DENIED.

## II. FACTUAL BACKGROUND

Plaintiff's FOIA/PA Requests primarily concern his and others' prosecution, convictions, and the underlying criminal investigation related to the 1993 World Trade Center bombing. Sec. Am. Compl. at 4, 9–10, 18; Pl.'s MSJ Opp. I at 5–6; Pl.'s MSJ Opp. II at 1, 4–5.

<u>FOIA/Privacy Act Request No. FOIA-2014-02098</u>

On April 24, 2014, EOUSA received two FOIA/PA correspondences from Plaintiff, dated April 10, 2014. Stone Decl.[3] ¶ 5; Stone Ex. B. EOUSA elected to treat the two correspondences as a single FOIA request, assigning them Request No. 2014-02098. In his first correspondence, Plaintiff provided the following details: "The government sent a letter to the defense counsel (dated July 22, 1994) declaring it filed a petition for non-disclosure of classified information, I am asking for a copy of that above mentioned (July 22, 1994) letter.[4]" *Id.* In the second correspondence, Plaintiff indicated that he now also sought "a single page, Exhibit C," which Plaintiff claims was attached to "a declaration by Hugh H. Price, Deputy Director of Operations,

---

[3] In support of its Renewed Motion, and as it relates to Request No. FOIA-2014-02098, EOUSA resubmits the declaration of Principa Stone, an Attorney-Advisor with the FOIA/PA staff of EOUSA. The Stone Declaration included in the Renewed Motion is identical to her declaration submitted with the First Motion, as is the accompanying Vaughn Index. EOUSA also continues to rely on the exhibits included with Stone's declaration in the First Motion.

[4] Hereinafter, the "Government Letter."

Central Intelligence Agency, dated July 21, 1994." Stone Ex. B. Plaintiff stated that he did not

seek the full Price Declaration, merely the attached Exhibit C, which he believes contains

exculpatory information. Plaintiff believed the Price Declaration and Exhibit C to be classified

documents submitted in July 1994 as part of an "ex parte motion" during the prosecution of *U.S.*

*v. Elgabrowny*, *et al.*, No. 93-cr-00181 (MBM) (S.D.N.Y. filed 1993).[5] *Id.*

During the briefing of EOUSA's First Motion for Summary Judgment, both Plaintiff and

the court were perplexed regarding EOUSA's treatment of the Government Letter and Exhibit C.

*See* Pl.'s MSJ Opp. I at 9; Pl.'s Sec. Am. Compl. Ex. 36; *Elgabrowny*, 2019 WL 1440345 at *5.

The first issue was EOUSA's implicit conflation of the Government Letter and Exhibit C without

explanation. While the two documents share commonalities, and were purportedly executed

around the same time, Plaintiff has specified that they are separate documents. *See* Pl.'s MSJ

Opp. I at 9; Pl.'s Sec. Am. Compl. Ex. 36; Pl.'s MSJ Opp. II at 3, 9, 11–12, 18.

Second, EOUSA indicated that "Exhibit C had been filed under seal," and therefore could

not be released. Stone Decl. ¶¶ 21–2; Stone Ex. O. EOUSA then stated that it could not find any

such document, and instead proposed the release of a May 26, 1994 letter. Stone Decl. ¶¶ 25, 25

n.3. Based on a review of the docket entries in *U.S. v. Elgabrowny*, it appeared that Plaintiff was

requesting documents relating to ECF No. 675, and EOUSA instead released portions of a

document filed as ECF No. 250. *See id.* ¶ 27; Stone Ex. S; Pl.'s MSJ Opp. I at 9. This was

doubly confusing because both entries relate to documents authored by Robert S. Khuzami,

rather than Hugh Price. *See Elgabrowny*, No. 93-cr-00181 at ECF Nos. 250, 675. While it was

---

[5] The parties reference Plaintiff's criminal case as "*U.S. v. Elgabrowny*" and "*U.S. v. Rahman*" interchangeably. *Elgabrowny* and *Rahman* are the same case; several co-defendants were prosecuted in that matter, including Rahman and Plaintiff. *See id.* For purposes of clarity, the court will refer to the matter hereinafter as "*U.S. v. Elgabrowny.*"

clear that EOUSA found the May 26 letter responsive, questions remained regarding the existence and status, if any, of Exhibit C or the Government letter, and what, if any, relationship these documents had to one another or with the disclosed documents. *See* Stone Decl. ¶ 25; *Elgabrowny*, 2019 WL 1440345 at *5.

This confusion continued into the initial briefing of the Renewed Motion, despite EOUSA's submission of a more detailed declaration from Darian Hodge ("Hodge Decl. I"), ECF No. 62-4, the FOIA Contact/Coordinator for USAO-SDNY, who personally oversaw and handled the agency's searches. *See* Hodge Decl. I ¶¶ 1–11; Def.'s Renewed MSJ Memorandum of Facts ("Def.'s Mem. II") at 4, ECF No. 62-1. Now, however, through its Reply, EOUSA has clarified the obscuration by providing new information and including a supplemental Hodge Declaration ("Hodge Decl. II"), ECF No. 76-1, and a declaration from Theodore B. Smith ("Smith Decl."), ECF No. 71-7, an Attorney-Advisor with EOUSA's FOIA/PA department, *see also* Def.'s Reply at 2 n.1. These additional submissions, combined with the prior submissions, have provided the court with a more comprehensive understanding of the Requests, documents sought, and searches conducted, as summarized below.

On April 30, 2014, EOUSA requested that USAO-SDNY conduct a search for Exhibit C. Stone Decl. ¶ 6; Hodge Decl. I ¶¶ 3-6; Hodge Decl. II ¶ 3. USAO-SDNY located 281 boxes of potentially responsive records and estimated that it would take approximately 92 hours to review the files. Stone Decl. ¶ 8.

On February 11, 2015, EOUSA notified Plaintiff that the estimated search fee was $2,576.00. *Id.* ¶ 9; Stone Ex. C. Since the fee exceeded $25.00, EOUSA advised Plaintiff that work would not be completed until he agreed to pay the anticipated fees, pursuant to 28 CFR 16.11(e). *Id.* However, after reviewing the *U.S. v. Elgabrowny* docket, and locating the case

records indices, USAO-SDNY was able to limit its search to fewer boxes, thus reducing the projected hours and fees.  Stone Decl. ¶ 10; Hodge Decl. II ¶ 5.

On June 17, 2015, June 30, 2015, and September 22, 2015, EOUSA sent Plaintiff letters notifying him that USAO-SDNY would now only require approximately two hours of search time, for an estimated search fee of $80.00.  Stone Decl. ¶ 11; Stone Exs. D–F.  Again, EOUSA advised Plaintiff his Request would not be considered received and work would not be completed until he agreed to pay the fee in accordance with 28 CFR 16.11(e).  Plaintiff was allotted 30 days to respond or suffer administrative closure.  *Id.*

On September 17, 2015, EOUSA received another letter from Plaintiff, inquiring about the status and delay in processing of his Request, specifically for Exhibit C.  Stone Decl. ¶ 12; Stone Ex. G.  Plaintiff reiterated that he was seeking "a copy of Exhibit C that was attached to the 1994 CIA Price Declaration that was submitted by the government to the District Court on 1994 for in [] camera review of classified information[.]"  Plaintiff also requested expedited processing and a fee waiver.  *Id.*  On October 6, 2015, EOUSA received another letter from Plaintiff inquiring about the status of his requests for a fee waiver and expedited processing.  Stone Decl. ¶ 13; Stone Ex. H.  On October 14, 2015, Plaintiff agreed "to pay the $80 for the two hours search fee."  Stone Decl. ¶ 14; Stone Ex. I.

On December 3, 2015, EOUSA notified Plaintiff that his request for a fee waiver was denied because it did not meet the requirements of 28 CFR § 16.11(k).  Stone Decl. ¶ 15; Stone Ex. J.  On December 28, 2015, Plaintiff sent a letter asking about the status of his Request and again requesting expedited processing.  Stone Decl. ¶ 16; Stone Ex. K.  On February 10, 2016, EOUSA denied expedited processing.  Stone Decl. ¶ 17; Stone Ex. I.

On October 14, 2015, Hodge personally conducted a manual search of the relevant *U.S. v. Elgabrowny* file boxes and "the USAO records of the AUSAs who prosecuted Plaintiff[.]" Hodge Decl. I ¶¶ 5–6; Hodge Decl. II ¶ 6. He inquired with various personnel and contacted Security Officer Sharon E. Garvey and Records Manager Richard Gelbke, who searched the USAO's vault, where sensitive records are located. Hodge Decl. I ¶¶ 6, 8. Garvey and Gelbke confirmed that Exhibit C was not in the USAO vault, and despite efforts, Hodge could not find anyone else at USAO-SDNY who could "attest to whether Exhibit C was ever in the possession of any employee of the USAO, and if so, whom." *Id.* ¶¶ 6, 9. Hodge avers that the only copy of Exhibit C of which he is aware was provided to the U.S. District Court for the Southern District of New York for *in camera* review during litigation in *U.S. v. Elgabrowny*, and was then filed under seal, and he has no information that any other copies were ever stored at the USAO. *Id.* ¶¶ 7, 10; Hodge Ex. 1.

USAO-SDNY informed EOUSA that it could not locate Exhibit C, but that the case docket indicated that it once existed and had been filed under seal. *See id*; Stone Decl. ¶ 21. On February 23, 2016, EOUSA notified Plaintiff that USAO-SDNY had completed its search and was unable to locate Exhibit C. *See* Stone Decl. ¶ 20; *see also* Stone Ex. N. On May 3, 2016, EOUSA sent a supplemental response to Plaintiff, stating again that it could not locate Exhibit C, and that while the document is shown on the *U.S. v. Elgabrowny* docket, EOUSA has no authority to release sealed court documents. Stone Decl. ¶ 22; Stone Ex. O.

On April 26, 2016, Plaintiff filed an administrative appeal with OIP, which affirmed EOUSA's conclusions.[6] Stone Decl. ¶¶ 23, 24; Stone Exs. P, Q. In early November 2016, OIP

---

[6] Plaintiff also states that he filed other appeals with OIP. These were either addressed, superseded, or rendered moot. *See* Sec. Am. Compl. at 11–14.

contacted EOUSA and recommended that it send a discretionary release to Plaintiff. Stone Decl. ¶ 25. More specifically, EOUSA stated, "Plaintiff sought a July 22, 1994, letter that the government [gave] to the defense counsel; however, because there was no such letter to be found, OIP recommended that EOUSA make a discretionary release of a May 26, 1994[] letter that appeared to be responsive to Plaintiff's FOIA request." *Id.* On November 9, 2016, EOUSA released, in part, one page and released, in full, one page, of the May 26, 1994 letter. *Id.* ¶ 26; Stone Ex. R. EOUSA withheld the name and signature of a government attorney associated with Plaintiff's prosecution, invoking FOIA Exemptions 6 and 7(C).[7] *Id.*

EOUSA finally fully clarifies, in its Renewed Statement of Facts ("Def.'s Stmt. II"), ECF No. 62-2, that it, in fact, never found Exhibit C, and that its supplemental disclosure, while perhaps responsive, did not include the document Plaintiff specifically requested. "Although the USAO was unable to locate Exhibit C, at the recommendation of the Office of Information Policy, EOUSA made a discretionary release of a May 26, 1994, letter that appeared to be responsive to Plaintiff's request for the letter of July 22, 1994." Def.'s Stmt. II ¶ 10; *see* Def.'s Mem. II at 5–6, 6 n.3; Stone Decl. ¶¶ 25, 25 n.3, 26; Hodge Ex. 1 at 27 (ECF No. 250). EOUSA

---

[7] Plaintiff does not contest the redactions, or use of Exemptions 6 or 7(C), as to the supplemental release of the May 26, 1994 letter; he only alleges that he received this document as a "substitute" for the documents he actually sought. *See* Pl.'s MSJ Opp. II at 7. "Where the FOIA requester responds to the government's motion for summary judgment without taking issue with the government's decision to withhold or to redact specific documents, the Court can reasonably infer that the FOIA requester does not seek those specific records or information and that, as to those records or information, there is no case or controversy sufficient to sustain the Court's jurisdiction." *Shapiro v. Dep't of Justice*, 239 F. Supp. 3d 100, 105–06 n.1 (D.D.C. 2017) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "To the extent the FOIA requester does not seek to compel the release of the withheld information, moreover, the Court need not—and should not—enter summary judgment in favor of the government . . . there is simply no dispute to resolve." *Id.* For these reasons, the court will not address whether it was appropriate to withhold the May 26, 1994 letter or whether Exemptions 6 and 7(C) were properly invoked for the supplemental release.

has now made clear that (1) it thoroughly searched for but did not find Exhibit C; (2) it released the May 26, 1994 letter relating to Robert S. Khuzami, also filed in *U.S. v. Elgabrowny*, because OIP found it tangentially responsive to the Request, but (3) Exhibit C and the documents released are not the same. *See id.*

Plaintiff filed another administrative appeal on January 5, 2017, alleging failure to release Exhibit C and the July 22, 1994 letter. Stone Decl. ¶ 27; Stone Ex. S. On May 12, 2017, OIP affirmed EOUSA's determinations. Stone Decl. ¶ 28; Stone Ex. T.

In its Reply, EOUSA acknowledges that it initially and improperly conflated Exhibit C with the Government Letter. Def.'s Reply at 2 n.1. However, EOUSA has since course corrected, and undertook an independent search for the Government Letter in December 2019. *See* Hodge Decl. II ¶¶ 7, 10. Hodge coordinated with Assistant U.S. Attorney John McEnany, who personally reviewed the indices corresponding to 293 case file boxes from *U.S. v. Elgabrowny*, among other case files. *See id.* ¶¶ 7, 9, 10. McEnany determined that 27 box index entries were potentially relevant and told Hodge "where the documents at issue, if in possession of the United States Attorney's Office, were likely to be found." *Id.* ¶ 10. Hodge and the USAO-SDNY Records Manager manually searched the relevant boxes and examined them document-by-document but did not locate the Government Letter or any other responsive records. *Id.*

FOIA/Privacy Act September 30, 2015 (Unassigned) & Request & No. FOIA-2016-04133

Plaintiff attests that he submitted another FOIA/PA Request and demand for fee waiver and expedited processing to EOUSA on September 30, 2015, requesting "a copy of the 1995 FBI agents['] hand [written] notes of interviews with the mastermind of the 1993 WTC bombing conspiracy (Abdul-Basit Mahmoud Abdul Karim) also known as [Ramzi Ahmad Yousef],"

arising out of (1) an interview with an FBI Special Agent on February 7, 1995 in Pakistan, and (2) an interview with an FBI Special Agent on an airplane during Plaintiff's extradition on February 7, 1995. Sec. Am. Compl. at 15; Sec. Am. Compl. Ex. 37; Pl.'s MSJ Opp. I at 9–12. He specifically requested that EOUSA search the files of its field offices at the USAO-SDNY. According to Plaintiff, he sent this Request via certified mail with return receipt and never received a response. *See id.*

Plaintiff filed an administrative appeal with OIP on December 21, 2015, asserting that EOUSA had not yet responded to his FOIA request. Stone Decl. ¶ 18. On February 17, 2016, OIP denied Plaintiff's administrative appeal, informing Plaintiff that EOUSA was currently processing his FOIA Request, and his fee waiver request was moot because EOUSA had responded on December 3, 2015. *Id.*; Stone Ex. M.; Sec. Am. Compl. at 17; Sec. Am. Compl. Ex. 39; Pl.'s MSJ Opp. I at 10. It appears that Plaintiff was attempting to appeal the lack of response to his September 30, 2015 Request, while OIP interpreted this appeal to be related to his first Request, No. 2014-02098. *See id.*

On September 1, 2016, Plaintiff submitted a "supplement" to his September 30, 2015 Request, additionally seeking handwritten agent "notes of interviews with Ramzi Yousef that took place after his extradition and return back to the U.S[.]⁸" Sec. Am. Compl. at 17; Sec. Am. Compl. Ex. 40-A; Pl.'s MSJ Opp. I at 10. On October 14, 2016, EOUSA treated the supplement as a new request, assigning Request No. FOIA-2016-04133. Sec. Am. Compl. at 17; Sec. Am. Compl. Ex. 40-B; Pl.'s MSJ Opp. I at 10; *see* Smith Decl. ¶ 6, 7. EOUSA did not instruct USAO-SDNY to search for records, Smith Decl. ¶ 8, and preliminarily denied the Request

---

⁸ Hereinafter the court refers to the documents requested in the September 30, 2015 Request and in Request No. FOIA-2016-04133 as "Yousef Interview Notes."

because it sought information regarding a third-party, determining that such information would be exempt from disclosure under the Privacy Act and under FOIA Exemptions 6 and 7(C) absent (1) authorization and consent from Yousef, or (2) proof of Yousef's death, or (3) a finding that the public interest in disclosure outweighed Yousef's personal privacy. Sec. Am. Compl. at 17; Sec. Am. Compl. Ex. 40-B; Pl.'s MSJ Opp. I at 10; Smith Decl. ¶ 7; Smith Ex. 1. Plaintiff claims he appealed this denial to OIP on October 24, 2016 and has not yet received a response. Sec. Am. Compl. at 17; Sec. Am. Compl. Ex. 40-C; Pl.'s MSJ Opp. I at 10.

In its First Motion for Summary Judgment, EOUSA did not address the unassigned September 30, 2015 Request or Request No. FOIA-2016-04133. *Elgabrowny*, 2019 WL 1440345 at *6. In its Renewed Motion, EOUSA also inadvertently failed to address these Requests. *See* Def.'s Reply at 2 n.1, 3. However, EOUSA has since remedied this omission through its Reply.

In its Reply, EOUSA asserts that it never received the September 30, 2015 Request. *See* Smith Decl. ¶ 5; Hodge Decl. ¶¶ 2, 8. Smith also attests that the contents of Plaintiff's September 30, 2015 Request, namely for Yousef's interview notes from February 7, 1995 interviews, would have automatically been considered as part of Request No. FOIA-2016-04133; according to Smith, the content of the latter Request and resulting search was expansive enough to include the information sought in the September 30, 2015 Request. *See* Smith Decl. ¶ 6. EOUSA also claims that Exemptions 6 and 7(C) would apply equally to the information requested in the September 30, 2015 Request because it likewise sought information about a third party. *See id.* ¶¶ 6–8; Def.'s Reply at 3. Nonetheless, "given [EOUSA's] failure to brief these issues in its initial motion for summary judgment and its renewed motion . . . EOUSA requested that the USAO-SDNY conduct a new search" for the Yousef Interview Notes, based

on the content in both the September 30, 2015 Request and Request No. FOIA-2016-04133.  *See* Smith Decl. ¶ 9; Def.'s Reply at 3.

According to Hodge, EOUSA undertook its search for all the Yousef Interview Notes in December 2019.  *See* Hodge Decl. II ¶¶ 7, 8.  It first determined that Yousef was prosecuted in *U.S. v. Salameh, et al.*, No. 93-CR-0180 (S.D.N.Y.).  *Id.* ¶ 8.  USAO-SDNY apparently maintains 387 storage boxes from that case.  *Id.* ¶ 9.  McEnany again reviewed the indices for the *U.S. v. Elgabrowny* and *U.S. v. Salameh* case files and boxes.  *Id.* ¶ 10.  He found 27 box index entries potentially relevant to the Yousef Interview Notes.  Hodge then personally searched all the documents in the corresponding boxes but did not find any responsive records.[9]  *Id.*

### III.  STANDARD OF REVIEW

In a FOIA case, a district court reviews the agency's decisions *de novo* and "the burden is on the agency to sustain its action."  5 U.S.C. § 552(a)(4)(B); *Military Audit Project v. Casey*, 656 F. 2d 724, 738 (D.C. Cir. 1981).  "[T]he vast majority of FOIA cases can be resolved on summary judgment."  *Brayton v. Office of U.S. Trade Rep.*, 641 F. 3d 521, 527 (D.C. Cir. 2011).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat

---

[9] FBI also conducted a search for the Yousef Interview Notes and could not find any responsive documents.  *See Elgabrowny*, 2019 WL 1440345 at *3.

summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it can affect the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy,* 813 F. 2d 1236, 1241 (D.C. Cir. 1987). In the FOIA context, "the sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" to defeat summary judgment. *Weisberg v. Dep't of Justice*, 627 F. 2d 365, 371 n.54 (D.C. Cir. 1980) (internal quotation marks omitted). In assessing a defendant's motion, a court must "view the facts and draw reasonable inferences in the light most favorable" to the plaintiff. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

In FOIA cases, summary judgment may be granted on the basis of an agency declaration. *Judicial Watch v. U.S. Secret Serv.*, 726 F. 3d 208, 215 (D.C. Cir. 2013) (citation omitted). Agency declarations are afforded a "presumption of good faith" and can be rebutted only with evidence that the agency did not act in good faith. *Defenders of Wildlife v. 77 U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). However, a plaintiff cannot rebut the good faith presumption afforded to an agency's supporting affidavits through "purely speculative claims . . ." *SafeCard Servs. v. SEC*, 926 F. 2d 1197, 1200 (D.C. Cir. 1991) (citation omitted).

In a Privacy Act access case, a court may similarly rely on agency affidavits or declarations to enter summary judgment. *See Chambers v. U.S. Dep't of the Interior*, 568 F. 3d 998, 1003 (D.C. Cir. 2009). At the summary judgment stage, where the agency has the burden to show that it acted in accordance with the statute, a court may rely on a reasonably detailed affidavit, setting forth the type of search performed, and averring that all files likely to contain

responsive materials (if such records exist) were searched. *Jimenez v. Executive Office for U.S. Attorneys*, 764 F. Supp. 2d 174, 179–80 (D.D.C. 2001) (citing *Chambers,* 568 F. 3d at 1003). The movant bears the burden of showing why summary judgment is warranted. *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) (citation omitted). A district court "must determine for itself that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law, and then 'should state on the record the reasons for granting or denying the motion.'" *Id.* at 508–09 (quoting Fed. R. Civ. P. 56(a)).

## IV. ANALYSIS

The adequacy of an agency's search is measured by a standard of reasonableness under the attendant circumstances. *Truitt v. U.S. Dep't of State*, 897 F. 2d 540, 542 (D.C. Cir. 1990). "In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance . . ." *North v. U.S. Dep't of Justice*, 774 F. Supp. 2d 217, 222 (D.D.C. 2011) (citing *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982)). A search need not be exhaustive, and the adequacy of a search is not determined by its results, but by the method of the search itself. *Brown v. FBI*, 675 F. Supp. 2d 122, 125–26 (D.D.C. 2009) (citing *Miller v. United States Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985) and *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

Once the agency has provided a "reasonably detailed" affidavit, the burden shifts to the FOIA requester to produce "countervailing evidence" suggesting that a genuine dispute of material fact exists as to the adequacy of the search. *Morley v. CIA*, 508 F. 3d 1108, 1116 (D.C. Cir. 2007) (internal citation and quotation marks omitted).

EOUSA has submitted declarations, authored by individuals with authority and detailed personal knowledge, establishing that the searches were reasonable and adequate. The affiants

clearly (1) identify the sources and locations searched; (2) explain why the relevant information, if possessed, would be stored in those sources and locations; (3) pinpoint the personnel involved with the searches; and (4) define the methodology, timeline, and scope of the searches. In addition to being reasonably detailed, the declarations appear to have been made in good faith. Therefore, the court finds the searches to have been adequate and reasonable. Because EOUSA searched and was unable to locate the documents, its preliminary invocations of the Exemptions are now moot and need not be addressed. *See* Def.'s Reply at 3; Smith Decl. ¶¶ 7, 8.

Plaintiff argues that EOUSA must be intentionally concealing Exhibit C because the document exists on the *U.S. v. Elgabrowny* case docket. *See* Pl.'s MSJ Opp. II at 7, 13. However, merely because a document exists, or once existed, does not mean that EOUSA possesses it, and "[a]n agency's failure to find a particular document does not necessarily indicate that its search was inadequate." *Brown*, 675 F. Supp. 2d at 125–26 (citing *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004) and *Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995)).

Plaintiff also argues that EOUSA must possess Exhibit C because policy mandates such retention. *See* Pl.'s MSJ Opp. II at 19–20; Pl.'s MSJ Opp. II Ex. 1. He cites to and holds out as authority, the "Security Procedures Established Pursuant to Pub. L. 96–456, 94 Stat. 2025, By the Chief Justice [Burger] of the United States for the Protection of Classified Information" ("Court Security Procedures"). Pl.'s MSJ Opp. II at 20. More specifically, he relies on a 1981 memorandum, apparently issued in furtherance of these Court Security Procedures, and seemingly directed to the attention of the "United States Department of Justice Litigation Security Group." *Id.*; Pl.'s MSJ Opp. II Ex. 1 ¶ 11. Plaintiff focuses on paragraph 11 of the memorandum:

> Final Disposition:  Within a reasonable amount of time after all
> proceedings in the case have concluded, including appeals, the court
> shall release to the court security officer all materials containing
> classified information.  The court security officer shall then transmit
> them to the Department of Justice Security Officer who shall consult
> with the originating agency to determine the appropriate disposition of
> such materials.  Upon the motion of the government, the court may order
> the return of the classified documents and materials to the department or
> agency which originated them.  The materials shall be transmitted in the
> manner specified in §7(c) of these procedures and shall be accompanied
> by the appropriate accountability records required by §9(b) of these
> procedures.

*Id.*  Plaintiff provides no other context or information regarding the Court Security Procedures, the accompanying memorandum, or the DOJ Litigation Security Group.  Even assuming this memorandum governed EOUSA procedures relating to *U.S. v. Elgabrowny*, the memorandum fails to advance Plaintiff's argument.  Its plain language clearly delegates post-trial responsibility for handling classified information to the court, not the relevant agency.  Thereafter, DOJ Security Officers are directed to coordinate with the "originating agency" to collectively determine, but not handle, the disposition of the materials.  *See id.*

Plaintiff implies that EOUSA was responsible for retrieving and permanently storing Exhibit C at the conclusion of his criminal proceedings.  *See* Pl.'s MSJ Opp. II at 20.  However, it is not even clear that EOUSA was the originating agency[10] of Exhibit C.  Additionally, paragraph 11 of the memorandum mandates that the court, in its discretion, *may* return classified documents to the originating agency, only "[u]pon the motion of the government[,]"  *Id.* at 19–20; Pl.'s MSJ Opp. II Ex. 1 ¶ 11, and it is unclear whether the government ever made any such motion.

---

[10] In fact, in this litigation, the CIA located Exhibit C, and the court found that it properly withheld the document pursuant to 5 U.S.C. § 552(b)(3).  *Elgabrowny*, 2019 WL 1440345 at *11, *14.

More pressing, and notwithstanding Plaintiff's unwarranted reliance on the Court

Security Procedures and accompanying memorandum, Plaintiff seeks documents that are nearly

thirty years old and which be difficult to locate, even if they had been returned to EOUSA.

FOIA does not impose a duty on agencies to keep their records indefinitely, and a requester is

only entitled to records that an agency has actually retained. *Bonfilio v. Occupational Safety &*

*Health Administration*, 320 F. Supp. 3d 152, 157 (D.D.C. 2018) (citing *Wilbur*, 355 F.3d at 678

and *Yeager v. DEA*, 678 F.2d 315, 321 (D.C. Cir. 1982)).

"[I]t is long settled that the failure of an agency to turn up one specific document in its

search does not alone render a search inadequate." *Ancient Coin Collectors Guild v. U.S. Dept.*

*of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (quoting *Iturralde v. Comptroller of Currency*, 315

F.3d 311, 315 (D.C. Cir. 2003)); *see also Bey v. U.S. Dept. of Justice*, 518 F. Supp. 2d 14, 21

(D.D.C. 2007) (quoting *Miller*, 779 F.2d at 1385) (an agency "is not required by [the FOIA] to

account for documents which the requester has in some way identified if it has made a diligent

search for those documents in the places in which they might be expected to be found"). Even

though some of the records Plaintiff seeks once existed, that fact does not guarantee or even

obligate EOUSA to have retained possession of those records. Plaintiff also argues that EOUSA

failed to segregate non-exempt information, Pl.'s MSJ Opp. II at 19, but EOUSA cannot

segregate information from documents it does not possess.

Next, Plaintiff argues that EOUSA failed to specify its search terms. *Id*. at 20–1. This

argument is unavailing because EOUSA conducted a manual search of physical files for specific

documents, rather than an electronic search which would require use of terms. Where a

declaration is clear that an agency manually searched physical boxes and/or documents, and the

relevant documents are "susceptible to a manual search of every page," then the issue of search

terms is resolved. *See Aguiar v. Drug Enforcement Administration*, 865 F.3d 730, 739 (D.C. Cir. 2017). Here, Hodge states that he and "the Records Manager retrieved the[] boxes and manually searched them document-by-document," and other personnel conducted manual searches of the sensitive records vault and the records of the AUSAs who prosecuted *U.S. v. Elgabrowny* and *U.S. v. Salameh*. Hodge Decl. I ¶¶ 5–9; Hodge Decl. II ¶ 8–10. The court finds that the declarations submitted are sufficiently detailed, particularly given that they need not "set forth with meticulous documentation the details of an epic search for the requested records." *Perry*, 684 F.2d at 127.

Plaintiff also advocates that the records will reveal "highly material exculpatory information regard[ing] plaintiff and his co-defendants[,]" Pl.'s MSJ Opp. II at 3, purportedly intentionally concealed at trial, and will assist in proving his innocence, *see id.* at 1, 3–5, 7–8. He claims that a public interest in this information exists because disclosure will raise questions about "the government's integrity while administering justice in Plaintiff's trial[.]" *Id.* at 1.

First, the public interest in this information, if any, is irrelevant because EOUSA could not locate the requested documents. Second, even if EOUSA had retrieved the documents, Plaintiff's arguments do not establish a public interest. A plaintiff's "personal interest in "seeking documents that should have been produced and made available to him at his criminal trial . . . does not suffice." *Petrucelli v. DOJ*, 51 F. Supp. 3d 142, 166 (D.D.C. 2014) (finding that while plaintiff may have a personal stake in obtaining FBI records to attack his criminal conviction, it did not contribute to any public interest in disclosure) (internal citations and quotation marks omitted); *see also Oguaju v. United States*, 288 F.3d 448, 450 (D.C. Cir. 2002) (finding that a requester's "personal stake in using the requested records to attack his convictions does not count in the calculation of the public interest"), *vacated on other grounds and*

*remanded*, 541 U.S. 970 (2004), *on remand*, 378 F.3d 1115 (D.C. Cir. 2004) (reaffirming prior

decision), *cert. denied*, 544 U.S. 983 (2005); *Engelking v. DEA*, 119 F.3d 980, 980–81 (D.C. Cir.

1997) (per curiam) ("To the extent [the appellant] argues that he seeks exculpatory information,

[his] personal need for information is immaterial to whether that information is protected from

disclosure by one of the exemptions to the FOIA."); *Lazaridis v. U.S. Dep't of Justice*, 766 F.

Supp. 2d 134, 145 (D.D.C. 2011) (holding that disclosure was unwarranted where plaintiff

requested documents to assist in proving violations under *Brady v. Maryland*, 373 U.S. 83

(1963)); *Brown v. DOJ*, 742 F. Supp. 2d 126, 133 (D.D.C. 2010) ("Assuming that plaintiff seeks

documents responsive to his request in order to challenge his conviction and/or bring to light

possible government misconduct, the Court finds that plaintiff has not demonstrated that either of

these reasons constitute[s] a 'significant' public interest in documents concerning [a third

party].").

Plaintiff's contention that there is "a generic public "interest in the administration of

justice" is equally futile. *Petrucelli*, 51 F. Supp. 3d at 166 (internal citations and quotation marks

omitted); *see also McCutchen v. Dep't of Health & Human Servs.*, 30 F.3d 183, 188 (D.C. Cir.

1994) ("A mere desire to review how an agency is doing its job, coupled with allegations that it

is not, does not create a public interest sufficient to override the privacy interests[.]").

Finally, Plaintiff relies on a finding in *U.S. v. Rahman*, 870 F. Supp. 47, 53 (S.D.N.Y.

1994), in which, during the course of the prosecution, the court ruled on the government's

petition for non-disclosure. *See* Pl.'s Opp. II at 19. As part of that petition, the documents at

issue were attached as exhibits to the Price Declaration, the Khuzami Declaration, and

accompanied by a Memorandum of Law ("Memorandum"). *See Rahman*, 870 F. Supp. at 53.

Both parties concede that, the Price Declaration included Exhibit C. *See id.* at 51. The court

found certain exhibits discoverable and certain exhibits protected but ruled that the Memorandum and Declarations would all be classified because they contained "the substance of the classified information submitted for review, and other classified information, and need not be disclosed." *Id.* at 53.

Plaintiff now argues that, pursuant to Request No. FOIA-2014-02098, EOUSA should have searched its case files for the Khuzami Declaration and Memorandum, because those documents likely refer to Exhibit C. *See* Pl.'s Opp. II at 16, 19; Pl.'s Surrep. at 3–4, 7. He acknowledges that he neither specifically requested the Khuzami Declaration nor the Memorandum, but that EOUSA interpreted his Request "too narrowly" and that the focus should have been on the "information" contained within Exhibit C, rather than Exhibit C itself. Pl.'s Surrep. at 4. The court disagrees, finding that Plaintiff now improperly seeks to broaden his search beyond the parameters of his actual Request. *See Houser v. Church*, 271 F. Supp. 3d 197, 204 (D.D.C. 2017) (holding that a requester shall not expand the scope of his FOIA request in the course of litigation). This finding is supported by the language of Plaintiff's Request.

Plaintiff unambiguously requested *only* Exhibit C, specifying "[t]o be clear and to reiterate, the record sought her[e]in is a single page, Exhibit C, that was attached to the Price Declaration, that accompanied the government's July 1994 motion . . . therefore, there is no need to search the entire case file. The information provided is sufficient to point your agency directly to the requested document." Stone Ex. B. Despite Plaintiff's claims, "[a]gencies . . . need not expand their searches beyond 'the four corners of the request,' nor are they 'required to divine a requester's intent.' " *American Chemistry Council,* Inc. *v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 62 (D.D.C. 2013) (quoting *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003)); *Kowalczyk v. Department of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996)

(holding that an agency "is not required to speculate about potential leads," nor "look beyond the four corners of the request for leads[.]")  Plaintiff indisputably sought one page, Exhibit C, and despite the fact that he knew the Declarations and Memorandum existed, he declined to request them.  *See* Stone Ex. B.  Plaintiff went so far as to instruct EOUSA to refrain from searching its case files, which the agency nonetheless endeavored to do.  *See id.*  EOUSA has therefore "not run afoul of FOIA by failing to search for or produce records" that were not part of his narrowly-tailored Request.  *Day v. Dep't of State*, No. 17-1418 (EGS), 2020 WL 1078955 at *6 (D.D.C. Mar. 6, 2020).

The court finds that Plaintiff has not shown that EOUSA failed to conduct an adequate search, and his supplemental arguments are likewise unpersuasive.  Consequently, the court finds that EOUSA's searches were reasonable under existing attendant circumstances based on its good faith declarations and other supporting documentation.  *See White v. DOJ*, 840 F. Supp. 2d 83, 89 (D.D.C. 2012).

## V.  PLAINTIFF'S FOURTH MOTION FOR IN CAMERA REVIEW

Plaintiff files a Fourth Motion for In Camera Review.  His First and Second Motions, ECF Nos. 51 at 41–4, 45–6, requested in camera review and discovery of documents purportedly in FBI's possession, including Exhibit C.  Third Mot. In Cam. at 1–3.  These Motions were denied because FBI searched its records and did not find any of the requested documents.  *Elgabrowny*, 2019 WL 1440345 at *16.

Plaintiff's Third Motion for In Camera Review, ECF No. 56, sought inspection of the CIA's retrieved Exhibit C.  That motion was denied because the court found that Exhibit C was properly withheld in full under Exemption 3.  *Id.* at *16.

Plaintiff's Fourth Motion requests an "in camera inspection to the search slips and processing notes the FOIA unit of USAO SDNY created during its search for [E]xhibit C." Pl.'s Mot. In Cam. IV ¶ 2; Pl.'s Surrep. at 1–2. He insists, without any basis, that EOUSA must have Exhibit C and accuses the agency of deliberately refusing to produce it for fear of exposure of alleged prosecutorial misconduct. *See* Pl.'s Mot. In Cam. IV ¶¶ 1–2; Pl.'s Surrep. at 1–3.

The D.C. Circuit has set forth criteria for determining the need for in camera review in FOIA/PA cases. *See Allen v. CIA*, 636 F. 2d 1287, 1293 (D.C. Cir. 1980), *abrogated on other grounds by Founding Church of Scientology*, 721 F. 2d at 831–32. These criteria do not limit the court's discretion to decide whether to conduct in camera review, but provide a list of factors to consider, including: (1) judicial economy, (2) the conclusory nature of the agency affidavits, (3) possible bad faith on the part of the agency, (4) whether the agency proposes in camera review, (5) disputes concerning the content of the document, and (6) the strong public interest in disclosure. *Id.* at 1297–299.

In light of the *Allen* factors, the court finds there is no basis to conduct an in camera review. EOUSA submitted detailed declarations, made in good faith, and a review of its search slips or processing notes is thus unnecessary and contrary to judicial economy. The agency has not joined in this request, and this appears to be Plaintiff's first demand for these particular documents; there is no indication that he has formally requested them through FOIA or the Privacy Act. Plaintiff's speculation that EOUSA must have engaged in some impropriety cannot form the basis for in camera review. *See DiViaio v. Kelley*, 571 F.2d 538, 543 (10th Cir. 1978) (finding that if courts were to conduct an in camera review each time a requester alleged the possibility of untruthfulness or existence of nonexempt material, an in camera review would be

required in every FOIA case, which is "clearly not what congress intended[.])"  Therefore,

Plaintiff's Fourth Motion for In Camera Review is denied.

## VI.  CONCLUSION

For all the foregoing reasons, EOUSA's Renewed Motion for Summary Judgment is

GRANTED and the case against EOUSA and DOJ is dismissed with prejudice.

Plaintiff's Fourth Motion for In Camera Review is DENIED.

An Order consistent with this Memorandum Opinion is separately and

contemporaneously issued.

Date:  March 25, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge